UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- x
                                          :
ETHON JAMES,                              :
                                          :
                      Petitioner,         :          **OPINION & ORDER**
                                          :
            -against-                     :          99-CV-7661 (DLI)
                                          :
UNITED STATES OF AMERICA,                 :
                                          :
                      Respondent.         :
-------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

Petitioner Ethon James filed a motion under Fed. R. Civ. P. 60(b) to set aside the denial of his habeas petition on two grounds. First, he claims that the denial "violates" the Supreme Court's decision in *United States v. Massaro*, 538 U.S. 500 (2003). Second, he argues that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the fact that two witnesses who testified against him were released less than a year after his trial. Based on the releases of these witnesses, he accuses the government of putting on testimony regarding their potential sentences that it knew or had reason to know was materially false. Petitioner also contends that the government committed a fraud upon the court by giving false closing arguments regarding the same matter. For the reasons set forth below, the motion is denied.

**I.      Background**

Petitioner was employed as a Lead Customer Service Agent for Delta Airlines at John F. Kennedy Airport. In late 1995 or early 1996, he joined a conspiracy to smuggle marijuana and cocaine into the United States by diverting suitcases containing these controlled substances from arriving international flights, where it would have to pass through U.S. Customs checkpoints, to the domestic baggage claim area. This way, the suitcases of drugs would avoid detection by U.S.

Customs.  Couriers would then retrieve the suitcases from the domestic baggage claim area and distribute the drugs to dealers in the area.  Petitioner participated in this conspiracy until about November 1996.

Petitioner was arrested on April 20, 1997.  On August 8, 1997, a jury convicted Petitioner of conspiring to distribute cocaine and marijuana and conspiring to import cocaine and marijuana.  During his trial, two other conspirators, Lloyd and Christine Wilson, provided testimony linking Petitioner to the charged conspiracies.  Prior to their testimonies, the Wilsons had pled guilty and entered into proffer and cooperation agreements with the government.  During his direct examination, the government asked the following questions and Lloyd Wilson gave the following testimony about his plea and cooperation with the government:

> Q: What is the maximum penalty you could receive for the crime you pled to?
> A: Life imprisonment.
> Q: What is the minimum amount of time you face under that agreement and to the crime you pled guilty to?
> A: Ten years.
> Q: In [your cooperation agreement with the government], did the government promise what sentence you were going to get?
> A: No, they did not. . . .
> Q: What is your understanding [of] what the Judge could do if the government writes a [5K1.1] letter telling the Judge you cooperated?
> A: Well, to my understanding, it would be in the Judge's discretion with the sentence, along with the guideline I would receive. . . .
> Q: Who will sentence you?
> A: Judge Mishler.
> Q: Has anyone promised you what sentence the Judge will impose?
> A: No, they haven't.

(Tr. 184-85.)  Christine Wilson testified that the maximum punishment she could receive for the crimes to which she pled guilty was a four-year prison sentence.  (Tr. 487.)  She also testified that she did not know what sentence she would receive and Judge Mishler would be the one to sentence her.  (*Id.*)  The Wilsons were released from prison less than a year after they testified.

On November 12, 1997, Petitioner was sentenced to a prison term of 235 months. The Second Circuit affirmed his conviction on October 30, 1998. On November 18, 1999, acting *pro se*, Petitioner filed a habeas petition pursuant to 18 U.S.C. § 2255 arguing that he was denied effective assistance of counsel because:

> (1) counsel failed to object when the government "stated to the jury 28 times that there was 'no dispute' over specific evidence"; (2) counsel failed to specifically recommend a two level downward adjustment for his minor role in the offense; (3) counsel did not move for a downward departure under Sentencing Guidelines Section 5K2.2, arguing outrageous government conduct; (4) counsel did not move for a downward departure under Sentencing Guidelines Section 5K2.0 "due to egregious disparity" between James' sentence and the sentences of his coconspirators; and (5) although he is procedurally barred from making the motion, he should be permitted to proceed because James' right to due process was violated and he was actually innocent.

United States District Judge Jacob Mishler, formerly of this court, denied this petition on March 6, 2000. Relying on *Billy-Eko v. United States*, 8 F.3d 111, 114-16 (2d Cir. 1993), Judge Mishler held that Petitioner was barred from raising claims of ineffective assistance of counsel since he failed to do so on appeal unless he showed cause for the procedural default and prejudice resulting from the claimed error. The Second Circuit denied review on November 3, 2000. On April 23, 2003, the Supreme Court abrogated *Billy-Eko* and held that the failure to bring a claim for ineffective assistance of counsel on direct appeal does not bar a petitioner from bringing the claim in a subsequent collateral proceeding. *See Massaro v. United States*, 538 U.S. 500, 508 (2003). Petitioner filed this motion for reconsideration under Rule 60(b) on February 2, 2005.

## II.    Discussion

Rule 60(b) of the Federal Rules of Civil Procedure permits courts to relieve parties from final judgments, orders, or proceedings for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

A motion for reconsideration under Rule 60(b) is addressed to the "sound discretion of the district court and . . . [is] generally granted only upon a showing of exceptional circumstances." *Mendell v. Gollust,* 909 F.2d 724, 731 (2d Cir. 1990), *aff'd,* 501 U.S. 115 (1991). These circumstances will "rarely occur in the habeas context." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters,[sic] in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Trans., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). Moreover, the evidence in support of the motion must be highly convincing. *See Scherer v. City of New York*, 03 Civ. 8445, 04 Civ. 2713, 2007 WL 2710100, at *4 (S.D.N.Y. Sept. 7, 2007).

Petitioner's claims fall into three categories. First, according to Petitioner, he is entitled to relief because Judge Mishler denied his habeas petition on procedural grounds, relying solely on *Billy-Eko*, which has since been abrogated by *Massaro*. Therefore, Petitioner asks the court to retract the denial of his petition and consider his claims of ineffective assistance of counsel (the "*Massaro* Claim"). Second, Petitioner raises a new claim for ineffective assistance of counsel that was not previously included in his habeas petition, namely, that his counsel was remiss by failing to argue for a five-year maximum sentence in light of the fact that the jury

returned a general verdict finding him guilty of marijuana and cocaine charges. Third, based on the releases of Lloyd and Christine Wilson approximately seven months after they testified against him, Petitioner accuses the government of: (1) allowing Lloyd Wilson to give false testimony; (2) lying to the jury in closing by arguing that the Wilsons "haven't gotten away with anything"; and (3) failing to disclose the so-called "early releases" of the Wilsons under *Brady* in time for him to raise it in his habeas petition (the "Early Release Claims").

      a.  The *Massaro* Claim

Although Petitioner does not specify the subsection or subsections of Rule 60(b) on which he is relying for his *Massaro* claim, his motion indicates that he is most likely invoking Rule 60(b)(5)—he urges the court to reopen his habeas petition because Judge Mishler's decision was based on *Billy-Eko*, which has since been abrogated by *Massaro*. *See* Fed. R. Civ. P. 60(b)(5); *Moses v. United States*, 97 Civ. 2833, 2005 WL 292976, at *3-4 (S.D.N.Y. Feb. 8, 2005). Regardless of which provision he is actually invoking, however, the court rejects his *Massaro* claim as untimely. Additionally, the underlying claims of ineffective assistance of counsel are unfounded and, therefore, re-opening Petitioner's petition so that the court could simply revisit these claims would be a futile exercise.

      i.  Timeliness

Rule 60(b)(5) motions must "be made within a reasonable time." Fed. R. Civ. P. 60(c)(1).[1] In order to determine whether Petitioner filed his *Massaro* claim within a reasonable time, the court must "scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d

---

[1] Given that Petitioner does not identify the subsections of Rule 60(b) upon which he relies, the court notes that the *Massaro* claim would be untimely under all subsections. Petitioner cannot meet the timeliness requirements of subsections (1)-(3) because he filed this motion more than one year after Judge Mishler denied his petition. Fed. R. Civ. P. 60(c)(1). Petitioner must file claims under the remaining subsections within a reasonable time. *Id.* As explained below, Petitioner did not.

Cir. 1983) (citations omitted) *cert. denied*, 464 U.S. 936 (1983). Although the Supreme Court

decided *Massaro* on April 23, 2003, Petitioner waited over twenty-one months before filing this

motion on February 7, 2005. Petitioner has not explained this delay. Federal courts have found

unexcused delays shorter than twenty-one months to be unreasonable and therefore, time-barred.

*See Moses v. United States*, 97 CIV 2833, 2002 WL 31011864, at *2 (S.D.N.Y. Sept. 9, 2002)

(listing decisions that rejected 60(b) motions on timeliness grounds for delays ranging from ten

to twenty months) (citations omitted); *see also United States v. Roccisano*, 89 CR.206 (PKC),

2005 WL 3543695, at *2 (S.D.N.Y. Dec. 28, 2005) (finding the petitioner's 60(b) motion based

on *Massaro* untimely because he had waited for approximately twenty-five months to file it).

Accordingly, the court finds that the *Massaro* claim was not made within a reasonable time and

may not be considered.

### ii. Ineffective Assistance of Counsel

Even if Rule 60(b) allowed the court to reach the merits of the *Massaro* claim, Petitioner

still would not prevail. To state a claim for ineffective assistance of counsel, he must satisfy a

particularly high burden. *See United States v. Gardner*, 97-1091, 1997 WL 615963, at *1 (2d

Cir. Oct. 7, 1997). He must show that: (1) his attorney's performance fell below "an objective

standard of reasonableness," and (2) there is "a reasonable probability that, but for the counsel's

unprofessional errors, the result of the proceedings would have been different." *Strickland v.

Washington*, 466 U.S. 668, 694 (1984). A court will generally presume that counsel had

rendered constitutionally adequate assistance and made significant decisions through the exercise

of sound professional judgment to which "a heavy measure of deference" is afforded. *Id.* at 691.

Petitioner raises three grounds for ineffective assistance that were also included in his habeas

petition:

(1) [t]rial counsel was constitutionally ineffective for failing to make appropriate and timely objection[sic] to the prosecution's 28 statements that evidence was undisputed thereby inviting the jury to infer guilt from Mr. James[sic] failure to take the stand and explain the evidence; (2) [s]entencing counsel failed to make an appropriate and timely request for the minor role adjustment under USSG 3B1.2(b) even though the role played by Mr. James, as explained through the perjured testimony of Lloyd Wilson, was less than the other Participants; and (3) [s]entencing counsel failed to move for a downward departure based on sentencing disparity.

(Pet'r Mot. at 8-9.) In each instance, however, Petitioner has not shown that his counsel's performance fell below "an objective standard of reasonableness."

Petitioner's attorney had no basis to complain that the government infringed upon his Fifth Amendment right by commenting, albeit twenty-eight times, that certain evidence was undisputed. Although prosecutors may not comment on a defendant's decision not to take the stand, that rule does "not prevent an argument that the evidence of the government is uncontradicted or unexplained." *United States ex. rel. v. Follette*, 418 F.2d 1266, 1269 (2d Cir. 1969) (citations omitted). Prosecutors may argue that evidence stands undisputed except in the exceedingly rare situation "where the Government's evidence on a material issue in dispute could be rebutted *solely* by the defendant's testimony." *United States v. Mulder*, 273 F.3d 91, 109 (2d Cir. 2001) (quoting *United States v. Hart*, 407 F.2d 1087, 1090 (2d Cir. 1969)) (emphasis added); *see also Follette*, 418 F.2d. at 1269. The Second Circuit has declined to find a Fifth Amendment violation when the "[d]efendant fails to show that the [prosecutor's] comments related to disputed issues or to evidence that could be rebutted only by his testimony." *See Mulder* 273 F.3d at 109. Petitioner has not explained how the prosecutor's comments relate to disputed and material issues that only he could have rebutted. Therefore, this argument fails.

Petitioner further argues that his sentencing counsel was ineffective for failing to request a mitigating role reduction as a "minor participant" under § 3B1.2 of the Sentencing Guidelines

on the sole basis that he played a lesser role than the other conspirators. Petitioner does not explain, however, how his role was less than the others except by mentioning that all of the other members "were in the conspiracy longer and presumably made more money than [he]." (Pet'r Reply at 8.) As an initial matter, Petitioner incorrectly believes that he could receive a reduction solely because "the role played by Mr. James . . . was less than the other Participants." (Pet'r Reply at 8.) Although § 3B1.2 permits a two-level downward adjustment where the defendant was a "minor participant," this adjustment "is not available merely because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be minor . . . as compared to the *average* participant in such a crime." *United States v. Gonzalez*, 06-0216-cr, 06-1899-cr, 2008 WL 925379, at * 121 (2d Cir. Apr. 7, 2008) (citations and internal quotation marks omitted) (emphasis added); *see also United States v. Carpenter*, 252 F.3d 230, 235 (2d. Cir. 2001) (vacating the decision to grant downward departure under § 3B1.2 because the sentencing court had relied solely on the relative culpability between the co-defendants and failed to also consider the *average* participant in a similar crime).

Petitioner has not explained how his role was minor compared to the average participant in a drug smuggling operation. In order for the defendant's conduct to be minor, the defendant must show, by a preponderance of the evidence, that he is *substantially* less culpable than the average participant. *Carpenter*, 252 F.3d at 235 (citations and internal quotation marks omitted); *United States v. Feliz-Ramirez*, 05-6254-cr, 2007 WL 1120374, at *2 (2d Cir. Apr. 17, 2007) ("Because [the defendant] failed to demonstrate that he was substantially less culpable than the average co-conspirator, we conclude that the district court did not err in declining to grant a minor role adjustment."); *United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir. 1993) (citing *United States v. Lopez*, 937 F.2d 716, 726-27 (2d Cir. 1991)). The evidence indicates that Petitioner's

role was anything but "substantially less culpable" than the average participant in a drug smuggling operation.

The success of the entire smuggling operation depended on the conspirators who had access to the baggage room, a secure area of the terminal where luggage was loaded and unloaded. Only individuals with proper identification from both Delta and U.S. Customs could enter the secure area. These individuals located the drug-filled suitcases and then retagged and diverted them from the international baggage claim to the domestic side in order to avoid inspection by U.S. Customs Service agents, thereby ensuring that the drugs would be delivered from the international suppliers to the dealers in the local area. Petitioner was one of the three and sometimes two co-conspirators who were tasked with this responsibility. As a supervisory customer service agent at the Delta Airlines Terminal, Petitioner had access to the secure baggage area and supervised other customer agents who also had access. Petitioner used this position to divert drugs through Customs for at least a year, smuggling eight suitcases of drugs and receiving at least $42,000 for his efforts. When Lloyd Wilson had suffered a back injury and was unable to come to work, Petitioner took on some of Wilson's responsibilities in the conspiracy. On one occasion, which was described as a "close call," Petitioner hid two suitcases from drug-sniffing dogs.

In short, Petitioner abused his supervisory position at Delta Airlines to facilitate drug deliveries and to protect the smuggling operation from law enforcement. The Second Circuit has explained that defendants who have similar or even smaller roles in comparable drug smuggling operations should not be entitled to a minor role reduction. *See United States v. Garcia*, 920 F.2d 153, 155 (2d Cir. 1990) (emphasizing that "[c]ouriers are indispensable to the smuggling and delivery of drugs and their proceeds."); *United States v. NG*, 00-1729, 2001 WL 735786, at

*3 (2d Cir. June 27, 2001) (the defendant assessed delivery arrangements, knowingly transported eight kilograms of heroin, and accepted $10,000 for his effort). As such, Petitioner's counsel can hardly be faulted for failing to request a minor role reduction for which Petitioner would not qualify.

Petitioner's counsel also had no basis to request a sentencing departure based on the sentencing disparity between him and the other co-conspirators. Under the relevant statutory provision, 18 U.S.C. § 3553(a)(6), a sentencing court must take into consideration "the need to avoid unwarranted sentence disparities among federal defendants with similar records who have been found guilty of similar conduct." *United States v. Fernandez*, 443 F.3d 19, 32 (2d Cir. 2006) (citing 18 U.S.C. § 3553(a)(6)). The Second Circuit, however, has not interpreted 18 U.S.C. § 3553(a)(6) to require that sentencing courts consider sentencing disparities among co-defendants' sentences particularly when the co-defendants are not similarly situated. *United States v. Andino*, 277 Fed.Appx. 126, 128 (2d Cir. 2008); *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) ("We have held that section 3553(a)(6) requires a district court to consider nationwide sentencing disparities, but does not require a district court to consider disparities between co-defendants."). The disparate sentences between Petitioner and the co-defendants were not unwarranted because they were not similarly situated: the co-defendants had pled guilty and cooperated with the government while Petitioner had not. *See United States v. Fearon-Hales*, 05-5999-cr, 2007 WL 1475630, at *3 (2d Cir. May 21, 2007) (finding that the disparate sentences are not unwarranted when the other defendants had pled guilty and cooperated with the government and the defendant had not); *United States v. Ebbers*, 458 F.3d 110, 129 (2d Cir. 2006) (explaining that different sentences among co-defendants were reasonable and readily apparent where co-defendants cooperated and defendant did not).

### b. Petitioner's New Claim of Ineffective Assistance of Counsel

In his 60(b) motion, Petitioner alleges for the first time that counsel was ineffective because he did not request a five-year maximum sentence based on the jury's general verdict of guilty to the importation/conspiracy charge involving marijuana and cocaine. Petitioner did not include this claim in his *pro se* habeas petition, even under the most liberal reading.[2] Rule 60(b) is not the proper vehicle to raise a new allegation of ineffective assistance of counsel. *See Mezer v. United States*, 01-CV-2525, 2005 WL 1861173, at *2 (E.D.N.Y. July 27, 2005) (Raggi, J.).

A petitioner seeking to revisit his habeas petition through Rule 60(b) may only include claims that challenge the integrity of the previous habeas proceeding rather than the constitutionality of the underlying criminal conviction. *See Harris v. United States*, 367 F.3d 74, 77 (2d Cir. 2004). A challenge to the underlying conviction constitutes a second or successive Section 2255 petition, which requires leave of the Second Circuit to file. *See Gitten v. United States*, 311 F.3d 529, 532 (2d Cir. 2002). A district court may entertain portions of a Rule 60(b) motion that properly fall within the scope of the rule while denying any other portions that attack the conviction. *See id.* at 534; *Alley v. Bell*, 392 F.3d 822, 829-30 (6th Cir. 2004) (holding that for Rule 60(b) motions that assert several potential bases for relief, "courts should follow a claim-by-claim approach when deciding whether the limitations on successive petitions" apply).

This new claim for ineffective assistance of counsel does not relate to the integrity of the prior habeas proceedings because it was not part of the original habeas petition. Moreover, allegations of ineffective assistance of sentencing counsel attack the underlying conviction rather than the integrity of the habeas proceedings. *See Mezer*, 2005 WL 1861173, at *2. Thus, this

---

[2] In deference to Petitioner's *pro se* status when he filed his habeas petition, the court liberally reviewed the petition "to raise the strongest arguments that [it] suggest[s]." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal citations and quotation marks omitted).

new claim constitutes a second or successive Section 2255 petition and falls outside the scope of Rule 60(b).

This claim is also untimely. Petitioner was certainly aware of the issue when he filed his original petition in November 1999 since he was present at the verdict and sentencing. He has not explained, however, why he did not include the claim then and why he waited more than five years before raising it. Under these circumstances, the claim is untimely under Rule 60(b). *See Mezer*, 2005 WL 1861173, at *1 (finding that the Rule 60(b) petition for ineffective assistance of counsel was untimely when the petitioner was fully aware of the underlying issues as they were being litigated but failed to include the claim in his habeas petition).

Even if his claim was timely and properly before this court, Petitioner cannot show that by failing to argue for a five-year maximum sentence due to the general verdict, his attorney's performance fell below "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). According to Petitioner, since the jury did not explicitly specify whether it found him guilty of the marijuana charge, the cocaine charge, or both, he should have received the more lenient sentence of sixty-months' imprisonment for the marijuana charge as a maximum. The court disagrees. When a jury returns a general guilty verdict on a single count of conspiracy involving multiple controlled substances, the district court must sentence the defendant as if convicted under the statutory provision carrying the most lenient sentence "*for which there was sufficient evidence supporting conviction*." *See United States v. Zillgitt*, 286 F.3d 128, 136 (2d Cir. 2002) (emphasis added); *see also United States v. Barnes*, 158 F.3d 662, 668 (2d Cir. 1998). The court concludes that there was insufficient evidence to support a guilty verdict for a marijuana-only conspiracy. The elicited testimony largely referred to the

contraband as either "drugs" or "narcotics," and nearly all of the evidence that identified a specific controlled substance related to cocaine.

The court also examined the government's summation and the district court's charge to the jury to determine whether the jury could have convicted Petitioner only in connection with the marijuana charges. *See United States v. Zillgitt*, 286 F.3d 128, 137 (2d Cir. 2002) (citations omitted). The government mentioned marijuana only twice in its closing—first noting that another conspirator was arrested while delivering cocaine *and* marijuana and second explaining that the group smuggled only marijuana at a time before Petitioner joined the group. The jury charge also reduces the possibility that Petitioner could have been convicted only for the marijuana activities. During the charge, Judge Mishler instructed that to convict Petitioner, the jury "must find that the purpose of the conspiracy was to distribute or possess with intent to distribute cocaine *and* marijuana." (Tr. at 802 (emphasis added); *see also* 794, 796, 804, 805 (explaining that Petitioner was charged with criminal acts involving cocaine *and* marijuana).) Judge Mishler never indicated that the jury could convict Petitioner merely because he participated in crimes involving marijuana *or* cocaine. *Compare Zillgitt*, 286 F.3d at 137 (finding that "the district court's sometimes use of the disjunctive (marijuana *or* cocaine) leaves open the possibility that the jury may have convicted Zillgitt of a conspiracy to distribute only marijuana.") (citations and internal quotation marks omitted) (emphasis in original). In light of the evidence presented at trial, the government's summation, and the charge to the jury, the court finds that Petitioner was not entitled to a sixty-month maximum sentence based on a marijuana conspiracy. As such, his counsel was not ineffective by failing to argue for this sentence.

c. The "Early-Release" Claims

The remainder of Petitioner's Rule 60(b) motion rests on two related claims. First, Petitioner claims that the government violated its obligation to disclose impeachment evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Petitioner alleges that the government had a duty to disclose, in time for him to include it in his habeas petition, the fact that Lloyd Wilson and Christine Wilson were released less than a year after they testified. Second, in light of the Wilsons' early releases, Petitioner alleges that the government perpetrated a fraud upon the court by arguing, in closing, that Lloyd and Christine Wilson "haven't gotten away with anything." According to Petitioner, this was a false statement because the government "either knew, or had a reason to know that, as a result of testimony against Mr. James, the Wilsons would be released less than one year from the date of their testimony." Along the same vein, Petitioner argues that the early releases prove that Lloyd Wilson gave false testimony and that he was convicted on the basis of perjury. (Pet'r Motion at 12.) None of these claims have merit.

i. The *Brady* Claim

It is important to emphasize that the only undisclosed information that Petitioner has raised as a possible violation of *Brady* is the so-called early releases of Lloyd and Christine Wilson. (Pet'r Mot. at 12, Pet'r Rely at 5.) Petitioner does not contend that there were any undisclosed promises of leniency that the government made to the Wilsons prior to their testimonies. Instead, he argues that the government, by failing to disclose the early releases, effectively denied him the ability to include an allegation of a *Brady* violation in his habeas petition. (Pet'r Mot. at 12.) In this regard, his *Brady* claim could possibly fall within the ambit of Rule 60(b) because it arguably challenges the integrity of his habeas proceedings. The court

does not, however, decide this issue given that the claim is untimely and the early releases are not material under *Brady*.

All motions under Rule 60(b) must be brought within a reasonable time and for those motions relying on claims of mistake, newly discovered evidence, or fraud, the petitioner must bring the claim no more than one year after the entry of judgment. Fed. R. Civ. P. 60(b). Again, Petitioner has not identified the specific subsection or subsections of Rule 60(b) upon which he relies. Regardless, this claim would be untimely under all six provisions. Judge Mishler denied Petitioner's habeas petition on March 6, 2000 and Petitioner filed the current motion on February 2, 2005. Thus, any claim under Rule 60(b)(1)-(3) would be barred by the one-year limitation. Hence, the only remaining question is whether Petitioner's decision to wait close to five years to raise this claim is reasonable. It is not. The Wilsons were released over six years before Petitioner filed this motion. Petitioner does not explain when he learned of the early releases or why he waited until almost five years after his petition was denied before seeking relief under 60(b). Given these circumstances, the *Brady* claim is untimely. *See Kellog v. Strack*, 269 F.3d 100, 104 (2d Cir. 2001) (holding that a two-year delay is unreasonable).

Petitioner believes that the early releases are material under *Brady* because a "skilled attorney could have used the early releases to put the Wilsons' testimony in an entirely different light" by establishing that the Wilsons had a strong incentive to lie. (Pet'r Reply at 5.) The court is not persuaded for three reasons. First, Judge Mishler did not sentence the Wilsons until after Petitioner's trial. Therefore, the court fails to see how an attorney, no matter how skilled, could have used events that had not yet occurred.

Second, Petitioner would not prevail even if he had alleged that the government had secretly promised more lenient sentences to the Wilsons. Such a claim would not be viable

under the present circumstances given that Petitioner's claim rests solely on his belief that the Wilsons received reduced sentences in return for their cooperation with the government. *See Shabazz v. Artuz*, 336 F.3d 154, 165 (2d Cir. 2003). In *Shabazz*, the Second Circuit held that the fact that a witness received a benefit, such as a reduced sentence, does not establish that prior to the defendant's trial, the prosecutor had promised leniency to the witness. *See id.* Moreover, the court emphasized that "the government is free to reward witnesses for their cooperation with favorable treatment in pending criminal cases without disclosing to the defendant its intention to do so, *provided* that it does not promise anything to the witnesses prior to their testimony." *Id.* (emphasis in original).

Third, the early releases would have been cumulative with other impeachment evidence and therefore, immaterial. Under *Brady*, the government has an obligation to disclose only material evidence favorable to the defendant. *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995); *Shabazz*, 336 F.3d at 162 (citations omitted). In order to establish materiality, Petitioner must show that the evidence could "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 162 (citations and internal quotation marks omitted). With impeachment evidence, "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." *United States v. Avellino*, 136 F.3d 249, 257 (2d Cir. 1998).

The Wilsons' credibility was subject to "extensive attack by reason of other evidence," and the jury had the opportunity to observe the Wilsons and assess their credibility under these conditions. During the cross-examination of Lloyd Wilson, Petitioner elicited testimony that

Wilson had previously lied to the government about this wife's involvement in the conspiracy. (Tr. 250.) The government also disclosed the Wilsons' proffer and cooperation agreements. Using this evidence, Petitioner argued that Lloyd Wilson had an extremely strong incentive to lie: that Wilson "lie[d] [his] behind off to get the best deal [he] can . . . ." (Tr. 739.) The government conceded that the Wilsons were guilty of the drug charges and in closing, described Lloyd Wilson as the "worst form of criminal, a drug dealer." (Tr. 722-73.) Petitioner also called two witnesses who testified that Wilson is a liar. (Tr. 642, 670-1.) One was a Delta Airlines employee and a social acquaintance of Lloyd Wilson and the other was Lloyd Wilson's friend and also godfather to his son. In summation, Petitioner used the evidence that Lloyd Wilson had lied to the government and the two witnesses' testimonies to argue repeatedly that Lloyd Wilson had lied on the stand about Petitioner's involvement. With respect to Christine Wilson, Petitioner argued that, because the government knew Lloyd Wilson was a liar, the government indicted Christine Wilson "so his wife could say something to corroborate the lie." (Tr. 745.) Petitioner also used the inconsistencies between Christine and Lloyd Wilsons' testimonies as "indicative of the story they made up." (Tr. 746.) In sum, Petitioner had ample evidence with which to attack the credibility of the Wilsons, and he did. Thus, the early releases merely would have "furnishe[d] an additional basis on which to challenge a witness whose credibility has already been shown to be questionable," and hence, they are immaterial under *Brady*.

ii. Fraud on the Court

Relying on *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), Petitioner alleges that the government's closing argument that the Wilsons "haven't gotten away with anything" was misleading and constitutes a "fraud upon the court" under the savings clause

of Rule 60(b).[3]  Petitioner also claims that the government secured his conviction through testimony that it knew or had reason to know was materially false and misleading.  Under the savings clause, a petitioner may bring an independent action to set aside a judgment for "fraud upon the court."  *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988).  Unlike motions brought under Rule 60(b)(1)-(6), which are subject to timeliness requirements, the clause provides that Rule 60 "does not limit the power of a court . . . to set aside a judgment for fraud upon the court."  Fed.R.Civ.P. Rule 60(d); *see also Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995).  Although the savings clause is not subject to the strict timeliness requirements of Rule 60(b)(3), which also addresses fraudulently obtained judgments, relief under the savings clause is "narrower in scope than that which is sufficient for relief by timely motion [under 60(b)(3)]."  *Gleason*, 860 F.2d at 558 (citations omitted).  While Rule 60(b)(3) deals with injury to a single litigant, fraud under the savings clause is limited to "fraud that seriously affects the integrity of the normal process of adjudication."  *Id.* at 559 (citations omitted); *see also Hazel-Atlas*, 322 U.S. at 246.

In order to bring such an independent action, a petitioner initially must show that he had no other available or adequate remedy and that his own "fault, neglect, or carelessness did not create the situation for which [he] seek[s] equitable relief."  *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997).  Petitioner does not survive this initial hurdle.  He had other available remedies at law, namely Rule 60(b)(3), and he has not demonstrated that his own neglect did not create the situation for which he now seeks relief

---

[3] While Petitioner does not explicitly invoke the savings clause of Rule 60(b), given his focus on a "fraud upon the court" rather than a fraud upon himself as an adverse party, and his reliance on *Hazel-Atlas*, which extensively discusses fraud upon the court under the savings clause, the court interprets his pleading under the savings clause. *See Trowbridge v. Inst. for Basic Research in Dev. Disabilities*, 98 CV 3529, 2003 WL 21143086, at *3 (E.D.N.Y. Mar. 3, 2003).  If plaintiff's fraud allegation was premised solely on "fraud upon himself as an adverse party," it would be untimely under Rule 60(b)(3), which is subject to the one-year limitation.  On the other hand, a fraud-upon-the-court allegation under the savings clause is not.  Fed. R. Civ. P. 60(b) and (d).

under the savings clause. As previously explained, Rule 60(b)(3) allows a court to relieve a party from a judgment for fraud "by an opposing party" so long as it is made within a reasonable time and "not more than one year after the judgment was taken." Fed. R. Civ. P. 60(b). Judge Mishler denied Petitioner's habeas petition on March 6, 2000 and Petitioner had until March 6, 2001 to bring a motion for relief under Rule 60(b)(3). Moreover, the Wilsons were released nearly three years before Petitioner needed to file a Rule 60(b)(3) motion for it to be timely. Petitioner does not explain when he learned of the early releases or why he did not file a Rule 60(b)(3) motion prior to March 7, 2001. Thus, he has not demonstrated that "his own neglect" did not foreclose relief under Rule 60(b)(3). *See Campaniello*, 117 F.3d at 662 (denying relief under the savings clause because the claimants could have sought relief under Rule 60(b)(3) but failed to show that their failure to file a Rule 60(b)(3) motion within the one-year period was not the result of carelessness).

Even if the court entertains this claim, it would fail nonetheless. In order to avail himself of the savings clause, a petitioner must prove the existence of the fraud by clear and convincing evidence. *See Madonna v. United States*, 878 F.2d 62, 64-65 (2d Cir. 1989) (citing *Booker v. Dugger*, 825 F.2d 281, 283-84 (11th Cir. 1987)). "[C]onclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud . . . ." *Booker*, 825 F.2d at 283-84 (citing *Di Vito v. Fidelity & Deposit Co. of Maryland*, 361 F.2d 936, 939 (7th Cir. 1966)). The petitioner must show that an officer of the court "*whose judgment is under attack*" acted in a manner that is "intentionally false, willfully blind to the truth, or is in reckless disregard for the truth." *Alley v. Bell*, 392 F.3d 822, 831 (6th Cir. 2004) (citations omitted) (emphasis in original). Petitioner has not satisfied this burden.

His allegation of fraud rests entirely on three events. First, Lloyd Wilson testified that he was facing a maximum sentence of life in prison and a minimum sentence of ten years without the 5K1.1 motion and had no idea what his actual sentence would be. Similarly, Christine Wilson testified that she was facing a possible four-year prison sentence without the 5K1.1 motion and also did not know what sentence she would receive. Second, the government argued in closing that "Lloyd Wilson and Christine Wilson haven't gotten away with anything." (Tr. 724.) Third, the Wilsons were released less than a year after they testified. Based solely on the so-called early releases of the Wilsons, Petitioner concludes that the government knew or should have known that the Wilsons' testimonies were false and, furthermore, the government perpetrated a fraud upon the court when it argued that the Wilsons "haven't gotten away with anything." There is no merit to this argument and the court finds nothing inaccurate with the testimonies or summation at issue.

At trial, both Lloyd and Christine Wilson accurately testified that they did not know what their sentences eventually would be. During summation, the government explained that Judge Mishler would sentence the Wilsons. Judge Mishler did not sentence the Wilson's until after Petitioner's trial. Petitioner's speculation that the government knew or should have known what sentence Judge Mishler would hand down is far from the clear and convincing evidence required to establish that the government acted in a manner that is "intentionally false, willfully blind to the truth, or is in reckless disregard for the truth." Accordingly, this claim is dismissed.

### III. Conclusion

For the reasons set forth above, Petitioner's motion pursuant to Rule 60(b) to vacate the judgment denying his habeas petition is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

SO ORDERED.

Dated: Brooklyn, New York
March 19, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge